# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**CHARLES E. ODELL AND**
**JUDITH L. RUGGERE-ODELL,**          Chapter 7
            Debtors                          Case No. 12-12023-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are "Trustee's Motion for Relief from an Order" filed

by Donald R. Lassman, the Chapter 7 trustee  of the estate of Charles E. Odell and Judith

L. Ruggere-Odell (the  "Trustee"), and the Opposition to that Motion filed by  Charles E.

Odell and Judith L. Ruggere-Odell (the "Debtors").  The Trustee seeks relief from an order

entered by this Court at a hearing held on August 28, 2012 in which this Court made

findings of fact and rulings of law with respect to the "Debtors' Motion to Amend Schedule

A and C" (the "First Order").  The First Order preceded an order entered by this Court on

the same date  pursuant to which this Court determined that the Trustee's Objection to the

Debtors' claimed exemption of an equitable interest in certain real property located at 949

Ferry Street, Marshfield, Massachusetts (the "Property") was moot (the "Second Order").

At the August 28, 2012 hearing, neither the Debtors nor the Trustee requested an

evidentiary hearing. Upon further review, however, there may be material facts in dispute.

Because the Trustee asks this Court to reconsider its finding regarding the First Order, this Court shall treat the Motion for Relief from Order as a motion for reconsideration. The issues presented include whether the Trustee has satisfied the standard for relief from judgment or order under Fed. R. Civ. P. 60, made applicable by Fed. R. Bankr. P. 9024.

## II. FACTS

### A. Procedural Background

The Debtors filed a voluntary Chapter 7 petition on March 12, 2012. On Schedule A-Real Property, the Debtors listed "None" for real property interests. On Schedule B-Personal Property, the Debtors marked "None" in response to question 16 (accounts receivable), question 18 (other liquidated debts owed to debtor including tax refunds), question 19 (equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed on Schedule A), and question 21 (other contingent and unliquidated claims of every nature). On Schedule D-Creditors Holding Secured Claims, the Debtors listed Wells Fargo Bank as the holder of a claim in the sum of $23,350 relating to a "Credit Line Secured [by] Son's Home." The Debtors added: "Debt secured by Son's Home. Closing attorney failed to close account and record discharge. Debtors mistakenly though [sic] account was a general unsecured account when they took the money." On Schedule G-Executory Contracts, the Debtors indicated that they were not

2

parties to any executory contracts or unexpired leases. On Schedule H-Codebtors, the Debtors listed their son as a co-debtor with respect to the claim of Wells Fargo Bank. On Schedules I and J-Current Income and Expenses of Individual Debtor(s), the Debtors disclosed social security income, as well as income from Mr. Odell's employment at London Harness, and an expense of $101 for rent or home mortgage. In the Debtors' Statement of Financial Affairs, they disclosed that the monthly payments of $101 were made to Wells Fargo Bank, although as will be discussed below, the Debtors' son and daughter-in-law purchased the Property by obtaining a mortgage from Bank of America and ostensibly using the proceeds to pay off both the first and second mortgages. The second mortgage to Wells Fargo, however, was not satisfied.

The Chapter 7 Trustee conducted the section 341(a) meeting of creditors on May 7, 2012. At the meeting, Charles Odell described the oral agreement that resulted in the execution of a note in the sum of $231,000 (the "Note"), and a reduction of the balance of the Note in exchange for the Debtors' ability to reside at the Property. Following the meeting of creditors, on May 22, 2012, the Debtors moved to amend Schedule A-Real Property to list an "equitable interest" of $66,985 in the Property, subject to the secured claim of Wells Fargo Bank of $23,350, and Schedule C-Property Claimed as Exempt to claim the equitable interest in the Property as exempt under 11 U.S.C. § 522(d)(1) in the amount of $43,250 (the "Debtors' Motion to Amend Schedules"). In their Motion, the Debtors stated:

3

> After discussions with the Debtors and reviewing documents from the Debtors, it was discovered that the Debtor's [sic] have a possible equitable ownership interest in their son's home that was not disclosed on their schedules.

> The equitable interest that the debtors possess is quantifiable and would be enforceable by the Debtors against their son, as such it should be listed on the Debtor's [sic] schedules.

> Debtors are entitled to an exemption in said property pursuant to 11 U.S.C. § 522(d)(1) since their interest is an interest in real property that they use as a residence.

On their amended Schedule A, the Debtors stated: "Debtors invested $124,585 in remodeling improvements to their sons's home in May, 2008 to create a separate apartment for themselves. They reside in the apartment and pay no rent. Fair market rental value of the apartment is $1,200/mo. Value calculated as follows: $124,585 - (48 mo. x $1,200)." After living in the apartment for forty-eight months, the remaining value of the $124,585 was equal to $66,985 ($124,585 minus $57,600 (48 times $1,200) equals $66,985). On their amended Schedule C, the Debtors claimed $43,250 of the $66985 as exempt pursuant to 11 U.S.C. § 522(d)(1).

On May 25, 2012, the Trustee filed his Objection to the Debtors' Motion to Amend Schedules A and C and his Objection to Exemption to which he attached a Quitclaim Deed and a "M & J Plan Schedule" which purports to be an accounting of payments and setoffs under the $231,000 Note. In his Objection to the Motion to Amended Schedules, as well as his Objection to the Debtors' claimed exemption in an equitable interest in the Property,

4

the Trustee alleged that the Debtors acquired title to the Property by deed ("Deed"), dated

March 6, 1995, for $189,900.00 in stated consideration; that the Debtors transferred the

Property to Mathew [sic] Giovanello and Jessica L. Giovanello (then Jessica L. Thompson)

by deed ("Transfer Deed"), dated May 19, 2003, for stated consideration of $1.00; that

Mathew Giovanello is an insider of either Debtor or both Debtors; that the Debtors have

resided at the Property during all relevant times; that on or about May 19, 2008 the

Giovanellos completed renovations to the Property that created a separate living space; that

Debtors acknowledge contributing at least $124,585 for renovations to the Property at a

time when they did not own it; that the Debtors borrowed $23,250 from Wells Fargo Bank

for renovations to the Property; that the Debtors have no written lease for the in-law

apartment and that the Debtors had not placed the Property in trust.  The Trustee added

that documents produced by the Debtors reflected that (1) Debtors and the Giovanellos

agreed that the Property had $231,000.00 in equity in 2003; (2) the parties arranged for the

Giovanellos to repay the equity pursuant to a balloon Note, which Note has not been

produced by either the Debtors or the Giovanllos; and (3) the parties deemed the balloon

Note paid in full as of December 2008.  Based upon those allegations, the Trustee

contended that the Debtors filed the Motion to Amend in bad faith.

In his Objection to the Debtors' claimed exemption, the Trustee contended that the

Debtors cannot utilize 11 U.S.C. § 522(d)(1) as they have no legal or beneficial interest in

the Property as "no written trust exists and no oral trust is asserted." In addition, he

5

maintains that the Debtors cannot exempt the contributions of $124,585 and $23,250 under 11 U.S.C. § 522(g) if he were to recover them as fraudulent transfers under the Massachusetts Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A, §§ 5 and 6.  *See* 11 U.S.C. §§ 544, 550.

On July 5, 2012, the Debtors filed Responses to the Trustee's Objections to which they attached copies of pertinent documents, including a HUD Settlement Statement dated May 19, 2003, reflecting a loan to the Debtor's son and daughter-in-law in the principal sum of $320,000 and the intent to satisfy a first mortgage of $214,172.75 and a second mortgage in the sum of $24,913.59 owed to Wells Fargo Bank; a five-year balloon Note payable to the Debtors by Mathew Giovanello and Jessica Thomson in the principal sum of $231,000; an unrecorded mortgage executed by the Debtors' son and daughter in law to secure the Note; and the Affidavits of Charles Odell and Mathew Giovanello. With respect to the second mortgage, they stated:

> During his due diligence, the Debtors' attorney also learned that the closing attorney had failed to close the debtor's line of credit that was recorded as a second mortgage on the property and that the debtors had inadvertently charged additional funds to the line of credit. . . . This second mortgage continues to be secured by the property.

Through their Responses, the Debtors contended that the their son and daughter-in-law purchased the Property from them on May 19, 2003 for $536,345 with the proceeds

used to pay off the first and second mortgages;[1] that the Debtors provided seller financing in the form of a balloon Note in the amount of $231,000, which matured on May 19, 2008;[2] that after the purchase the Debtors rented a bedroom for $1,000 per month, which was deducted, together with a portion of the utility bills, from the balance owed on the Note; that at maturity there was an outstanding balance due on the Note of $148,870; that when the Note matured the Debtors' son and daughter-in-law orally agreed to build an in-law apartment at the Property; and that the balance due on the Note after the construction of the in-law apartment was $32,704, which was paid in full in December 2008. The Debtor stated: "Our agreement and understanding with our son was that the in law apartment would be ours and we would never have to pay rent, could never be evicted, and should our son ever sell the house, we would be given some money." He also stated that "[w]e did not forgive any portion of the promissory note our son owed to us."

The Trustee then filed a Reply to the Debtors' Responses on July 12, 2012, and, as noted above, on August 28, 2012, the Court held a hearing on the Debtor's Motion to Amend Schedules, the Trustee's Objection to that Motion and the Trustee's Objection to the

---

[1] The Debtors admit they contributed $124,585 for renovations. On the one hand, they state that the total purchase price of the Property was $470,236.34. They derive that number by adding $214,172.75 + $24,913.59 + $150 + $231,000, which totals $470,239.34, not $470,236.34, a $3 difference. Elsewhere, they state that the total purchase price was $546,345. The closest this Court can get to that figure is by adding the balance of the first and second mortgages; cash back to the borrowers of $76,287.66 and the $231,000 Balloon Note, a $111 difference. Charles Odell in his Affidavit maintained that in addition to the $231,000 note the Debtors received $72,287.66 in cash, which must have come from their son and daughter in-law. Notably, the second mortgage was not satisfied.

[2] The Note provided for monthly payments of $300 and an interest rate of 2.5%.

Debtor's claimed exemption in the interest listed on amended Schedule A.  Following the

hearing, the Court entered the First Order, which contained the following findings and

rulings:

> Based upon the undisputed facts as agreed to by the attorney for the trustee
> and attorney for the debtor at the hearing held on August 28, 2012, the Court
> finds and rules that 1) the Debtors did not have an equitable interest in the
> real estate located at 949 Ferry Street, Marshfield, Massachusetts (the
> "Property") that would constitute property of the estate within the meaning
> of 11 U.S.C. Section 541; 2) the trustee does not have a claim for relief for
> collection of an account receivable or for avoidance of a fraudulent transfer
> against the Debtor's son and his spouse relating to their purchase of the
> Property as their obligations to the Debtors on account of financing for the
> purchase of the Property by their son and his spouse have been paid and
> satisfied by the exchange of reasonably equivalent value in the form of cash
> payments and the value of their occupancy of an apartment at the Property.

B. The Basis for the Court's Ruling and the Positions of the Parties

1. Trustees Objection

The Trustee opposed the Debtors' Motion to Amend Schedules on May 25, 2012 on

grounds of bad faith.  He contended that the oral agreement for the son and daughter-in-

law to build an in-law apartment at the Property for the Debtors to live there rent-free

either created an oral life estate or an oral trust that should have been listed on Schedule

A as real property owned by the Debtors at the commencement of the case.  He argued that

the Debtors' failure to list this oral agreement as an estate asset constituted bad faith.

Alternatively, he asserted that, if the Debtors do not have an equitable interest in the

Property, he could recover $124,585, the amount deemed satisfied in May 2008 in exchange

for the agreement entitling the Debtors to live in the new in-law apartment rent-free, as a

fraudulent transfer or as a receivable owed to the estate by the son and daughter-in-law.

In the Trustee's Motion for Relief from an Order, the Trustee moved for relief from the First Order. He requested authority to allow him to commence an action to recover $124,585 from the Debtors' son and daughter-in-law. Specifically, he asked the Court to reconsider its finding that, "the trustee does not have a claim for relief for collection of an account receivable or for avoidance of a fraudulent transfer against the Debtors' son and his spouse." The Trustee argued that such recovery is proper because the estate has a claim against the Debtors' son and daughter-in-law for failing "to satisfy their agreement to purchase the Property." The Trustee further argued that the $124,585 could not properly be credited against the Note because the Debtors did not receive any benefit from the exchange if they did not receive an equitable interest in the Property. In his view, the Debtors' son and daughter-in-law merely invested their own money to improve their own Property and the $124,585 is a claim of the estate against the son and daughter-in-law.

2. The Debtors' Response

In response, the Debtors argued that the Trustee erred in the assertion that they did not receive a benefit from the $124,585 reduction in Note balance. The Debtors maintained that they have benefitted from the agreement because they continue to live in the in-law apartment constructed by their son and daughter-in-law, rent free, as they have since the completion of the construction.

Additionally, the Debtors argued that even if they did not receive a benefit from the

paydown of the Note, the Trustee would not be able to recover the $124,585 for the estate

because any such recovery is time barred.  The Debtors asserted that this Court already

found that both the Debtors and their son and daughter-in-law considered the Note to be

paid in full as of December 1, 2008.  Therefore, even if the absence of any benefit from the

exchange for the $124,585, the Debtors asserted that the Trustee's recovery would be

limited to the "forgiveness of debt" to an insider.  Therefore, they maintained that the only

avoidance action that the Trustee would have is a preferential transfer claim pursuant to

11 U.S.C. § 547(b).  The Debtors, however, contended that any alleged transfer would be

time barred because a trustee may only avoid a preferential transfer to an insider if the

transfer was made within one year of the date that the filing of the bankruptcy petition

pursuant to 11 U.S.C. § 547(b)(4).  Because the alleged forgiveness of debt occurred in 2008,

more than one year prior to the filing of the Debtors' bankruptcy petition, the Debtors

argued that the Trustee has no avoidance action against the Debtors' son and daughter-in-

law.

Neither the Debtors nor the Trustee requested a hearing on the Trustee's Motion for

Relief from an Order.

## III. ANALYSIS

A. <u>Applicable Law</u>

The Court finds that Rule 60(b) is applicable to the instant matter. Rule 9024 of the

Federal Rules of Bankruptcy Procedure makes Fed.R.Civ.P. 60 applicable to cases under

the Bankruptcy Code, subject to certain exceptions not relevant to the instant adversary

proceeding. Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or
> his legal representative from a final judgment, order, or proceeding for the
> following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been
> discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic),
> misrepresentation, or other misconduct of an adverse party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior
> judgment upon which it is based has been reversed or otherwise vacated, or
> it is no longer equitable that the judgment should have prospective
> application; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion  for reconsideration under Rule 60(b) is not a means by

which parties can rehash previously made arguments. *See* <u>In re Grand Builders, Inc.</u>, 122

B.R. 673, 675 (Bankr. W.D. Pa. 1990). As stated by Judge Hillman in <u>In re Wedgestone Fin.</u>,

> Arguments which counsel did not present the first time or which counsel
> elects to hold in abeyance until the next time will not be considered.
> Arguments which were fully considered and rejected by the court the first
> time will not be considered when repeated by counsel the second time.

142 B.R. 7, 8 (Bankr. D. Mass. 1992) (citing <u>In re Armstrong Store Fixtures Corp.</u>, 139 B.R.

347, 350 (Bankr. W.D. Penn. 1992)). The moving party must show newly discovered

evidence or a manifest error of fact or law to succeed on a motion to reconsider. In re

Mortg. Investors Corp., 136 B.R. 592, 598 (Bankr. D. Mass. 1992).

B. Analysis

Upon consideration of the arguments of the parties, this Court grants the Trustee's

Motion for Relief from an Order.  As noted above, "[t]o succeed on a motion to reconsider,

the Court requires that the moving party show newly discovered evidence or a manifest

error of fact or law."  In re Wedgestone Financial, 142 B.R. at 8.  In his Motion for Relief

from an Order, the Trustee asks the Court to reconsider its findings in the First Order that

the Trustee "does not have a claim for relief for collection of an account receivable . .

."against the Debtor's son or his spouse and that their ". . . obligations to the Debtors on

account of financing for the purchase of the Property . . . have been paid and satisfied by

the exchange of reasonably equivalent value . . . ."  Although the Trustee failed to

specifically set forth any newly discovered evidence or refer to any manifest error of law

or fact as to those findings, both parties failed to articulate the nature of the Debtors'

interest in the Property, and the Trustee failed to articulate a cognizable legal theory for

recovering sums from the Debtors' son and daughter-in-law, the Court concludes that

factual issues exist and a determination of any potential claims for relief that the estate may

have must be made in the context of an adversary proceeding and not in the context of the

Debtor's Motion to Amend Schedule A and C.  Accordingly, the Trustee's limited request

for reconsideration is appropriate.  The Court, however, does not reconsider its conclusion

12

that the Debtors' have no interest in the Property that could properly set forth on Schedule

A.

Based upon the arguments of the parties, the Court concludes that the Debtors at

best may be entitled to a determination that a resulting trust was created or that they were

the beneficiaries of an oral lease.  According to the court in Clemente v. Nickless, 434 B.R.

202 (D. Mass. 2010),

> A resulting trust arises where a party conveys property under circumstances
> that raise an inference that she does not intend for the transferee to receive
> the entire beneficial interest in the property. *See* In re Lan Tamers, 281 B.R.
> 782, 792 (Bankr. D. Mass. 2002) (citing Restatement (Third) of Trusts, § 7 ).
> Resulting trusts are primarily used to give legal effect to a party's intent at
> the time of the transfer. In re Valente, 360 F.3d 256, 263 n. 3–4 (1st Cir.2004)
> (applying Rhode Island law but relying on the Restatement of Trusts). A
> resulting trust is generally imposed in either of two circumstances: 1) where
> an express trust fails or 2) where there is a "purchase money conveyance"
> whereby a transfer of property is made to one person and the purchase price
> is paid by another, such that a trust results in favor of the person who
> furnished the consideration. *See* Restatement (Third) of Trusts, § § 8–9; *see
> also* DiCarlo v. Lattuca, 60 Mass.App.Ct. 344, 802 N.E.2d 121, 125 (2004)
> (discussing the theory of purchase money conveyance).

Clemente, 434 B.R. at 205.[3]

---

[3] The court added:

The conveyance of the  . . . Property does not fit neatly into either of the
two general categories because, as both parties agree, it was neither a
purchase money conveyance nor a failed express trust. Thus, a proper
determination of whether a resulting trust was established depends upon
whether the circumstances as a whole demonstrate that the Debtor
intended to retain a beneficial interest in the property. *See* In re Tougas,
338 B.R. 164, 174 (Bankr. D. Mass. 2006) (looking to the "indicia of
ownership" of the property, rather than "the form in which [it] is held");
In re Jewett, 2007 WL 1288740, at * 5 (Bankr. D.N.H. May 2, 2007)

An oral lease of the in-law apartment potentially could fall within the partial

performance exception to the statute of frauds.[4]  In <u>Mulvanity v. Pelletier</u>, 40 Mass. App.

_____

(examining acts and conduct of parties with relation to possession of
realty to determine if trust was intended).

<u>Clemente</u>, 434 B.R. at 205.

[4] According to the court in <u>In re Mullarkey</u>, 410 B.R. 388 (Bankr. D. Mass. 2009),

The  . . . statute applies to trusts concerning real property. As a general
rule, "[n]o trust concerning land, except as may arise by implication of
law, shall be created or declared unless by a written instrument signed by
the party creating or declaring the trust or by his attorney." Mass. Gen.
Laws ch. 203, § 1. "If one orally agrees to hold land in trust for another an
express trust is created; . . . this oral trust is unenforceable . . . because the
statute of frauds requires that trusts concerning land, except those which
arise or result by implication of law, must be evidenced by a written
memorandum." <u>First Nat'l Bank of Boston v. Richmond (In re Gustie)</u>, 32
B.R. 466, 471 (Bankr. D. Mass.1983), *aff'd* 36 B.R. 473 (D. Mass. 1984).

The statute of frauds is not without situational exceptions, however. "[A]n
oral agreement to convey land may be specifically enforced in equity,
notwithstanding the statute of frauds, where the agreement has been
partly performed by the parting seeking to enforce it, by taking possession
and making improvements upon the estate, . . . so that he cannot be
restored to his original situation." <u>Hazleton v. Lewis</u>, 267 Mass. 533,
538–39, 166 N.E. 876 (1929) (quoting <u>Derby v. Derby</u>, 248 Mass. 310, 314,
142 N.E. 786 (1924)). A plaintiff's part performance of, or detrimental
reliance on, an oral agreement to convey property may estop a defendant
from pleading the statute of frauds. <u>Nessralla v. Peck</u>, 403 Mass. 757, 761,
532 N.E.2d 685 (1989) (citations omitted). "This rule applies with
particular force where the plaintiff has already provided consideration
consisting, at least in part, of an interest in land." <u>Barber v. Fox</u>, 36
Mass.App.Ct. 525, 530, 632 N.E.2d 1246 (1994).

<u>In re Mullarkey</u>, 318 B.R. at 351.

Ct. 106, 661 N.E.2d 952 (1996), a case involving a grandson's summary process action to

evict his grandmother from a two-family house and the grandmother's counterclaim for

breach of an oral lifetime lease and intentional infliction of emotional distress, the court

found an exception to the statute of frauds.  In <u>Mulvanity</u>, Pelletier and her late husband,

then the owners of the property, transferred title to their daughter and her husband (the

senior Mulvanitys) in return for an oral promise to allow the Pelletiers to live in the house

for life.  Four years later the senior Mulvanitys transferred the property to their son and

daughter-in-law, the plaintiffs, who allegedly knew of her claim to a life tenancy, although

it was not mentioned  in the Pelletiers' deed to the senior Mulvanitys nor in the senior

Mulvanitys' deed to the plaintiffs.  661 N.E.2d at 953.  The court determined the following:

> Because the counterclaim for contract damages was decided under Mass. R.
> Civ. P. 12(b)(6), we take Pelletier's allegations as true for purposes of this
> appeal. These allegations bring the case within the well defined line of
> decisions, often arising in the context of a transfer of real property by parents
> to children in return for oral assurances of lifetime support, that permit
> recovery based on failure of consideration when the promised support is not
> furnished. *See* <u>Robitaille v. Robitaille</u>, 34 Mass.App.Ct. 947, 948, 613 N.E.2d
> 933 (1993), and cases cited. Viewed differently, Pelletier, on the basis of the
> allegation that she performed by conveying the property, was entitled to the
> lifetime lease because the promise of the senior Mulvanitys, although oral,
> fell within the partial performance exception to the Statute of Frauds. *See*
> <u>Orlando v. Ottaviani</u>, 337 Mass. 157, 161, 148 N.E.2d 373 (1958); <u>Barber v.
> Fox</u>, 36 Mass.App.Ct. 525, 530, 632 N.E.2d 1246 (1994). Although the plaintiffs
> were not parties to that agreement, they took title from the senior Mulvanitys
> with notice (according, again, to Pelletier's allegations) of the equitable
> obligation to Pelletier, not as bona fide purchasers for value, and, hence, they
> took subject to that obligation. <u>Sunter v. Sunter</u>, 190 Mass. 449, 454, 77 N.E.
> 497 (1906). <u>Ratshesky v. Piscopo</u>, 239 Mass. 180, 184, 131 N.E. 449 (1921).
> <u>Linse v. O'Meara</u>, 338 Mass. 338, 344-346, 155 N.E.2d 448 (1959). Young v.
> Reed, 6 Mass.App.Ct. 18, 21, 371 N.E.2d 1378 (1978). If Pelletier should prove

that she did not leave the house voluntarily but, rather, in response to a refusal by the plaintiffs to permit her to live peaceably in the house, the measure of her damages would be the monetary value of her right to live in the house for life. <u>Robitaille v. Robitaille</u>, 34 Mass.App.Ct. at 949, 613 N.E.2d 933. It was error to dismiss the counterclaim for damages for breach of the oral lease.

<u>Mulvanity v. Pelletier</u>, 661 N.E.2d at 954.  Based upon the foregoing authorities, the Court finds that the Debtors may be entitled to amend Schedule B or Schedule G to describe an interest in the Property predicated upon the commencement of an adversary proceeding for a declaratory judgment, as amendments to the debtor's schedules under Fed. R. Bankr. P. 1009 are favored.  *See* <u>In re Raggie</u>, 389 B.R. 309 (Bankr. E.D.N.Y. 2008).[5]  Additionally, the Trustee may commence an adversary proceeding with respect to any potential claims he may have.

## IV. CONCLUSION

For the reasons stated above, the Court shall enter an order granting the Trustee's Motion for Relief from an Order.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

---

[5] If the Debtors had at the commencement of the case an oral lease of the in-law apartment, that lease was rejected by operation of law.  *See*  11 U.S.C. § 365(d)(1).  In the event such a lease existed and were rejected it would have no value to the estate.

Dated: October 10, 2012